LOUGHRY, Justice,
dissenting:
I dissent from the majority in its affir-mance of the lower court’s order upholding the Grievance Board’s decision to grant Mr. Litten’s grievance.[1] This case involves much more than a State employee using State-owned equipment to view adult-oriented material while at work. Mr. Litten’s circumvention of the network security measures placed the technological resources of the entire State at risk. While the majority finds that there was insufficient evidence before the Grievance Board to justify the DOH’s termination of Mr. Litten’s employment, I respectfully disagree for the reasons set forth below.
The evidence in this ease demonstrated that on August 27, 2010, Mr. Litten’s User ID and password were used to conduct internet searches in violation of the Office of Technology’s policies on Information Security and Network Violation Management, as well as the Department of Transportation’s policy regarding Proper Use of Information Technology. The search engine keywords, including such terms as “crotchless,” “blackzilla,” “dildo,” and “nude,” were obviously designed to access pornographic and adulboriented *225 websites. The technological evidence also showed that Mr. Litten’s User ID had been used at varying times to conduct searches using keywords “voyeur g string,” “what boys want,” and “upskirt.” Significantly, the DOH presented evidence, albeit limited by the Administrative Law Judge (“ALJ”), that Mr. Litten was the only employee ever observed by his eoworkers viewing pornographic material and adult-oriented websites on the break room computer.
Mr. Litten was clearly aware that accessing pornographic material on the break room computer was prohibited. The evidence showed that he had received extensive training concerning the proper use of State and DOH-owned technological resources. As the circuit court found in its order entered January 24, 2012, “[tjhis training included information on the importance of safeguarding the network by not accessing pornographic and other non-secure, non-work-related websites ... [,]” which included descriptions of threats to the State’s network and the user’s responsibility for safeguarding confidential data. Notwithstanding this extensive training, there was evidence that Mr. Litten devised how to circumvent the network security measures, which enabled him to access pornography on the Internet. There was also evidence that he then shared his dubious accomplishment with his co-workers so that they, too, could place the State’s network at risk by accessing websites otherwise inaccessible to State workers. As the Department aptly warns,
actions taken on a single State computer can compromise the security of the entire State network because each computer presents a point of entry into the network through which malware may be dispensed, including but not limited to virases and worms. Risks presented by malware to the State’s information technoloyy resources include the compromise of confidential data, not only to the Division of Hiyhways ... but also to “all the executive branch ayencies” because they are all on the same network. Obviously, such risks can be costly to identify and fix; they can also result in breaches of personal information, including health and financial information, retained by State agencies; and they can result in costly litigation.
(Emphasis added).
Mr. Litten grieved his termination on the basis that another employee must have accessed the pornographic websites using his User ID and password. He based his argument on what is essentially another violation of the Office of Technology’s network security policy:[2] his failure to protect his User ID and password. Mr. Litten admits that he wrote his User ID on the front — and his passwords on the back — of an informational document posted on a bulletin board located near the break room computer. However, a review of that document reflects that Mr. Litten omitted the first letter of his User ID, effectively rendering it useless to anyone but him, and his current password was not listed.
Mr. Litten also argued that he could not have conducted the pornographic searches because work records reflect that he was working at the times the websites were being accessed under his User ID and password. As the DOH points out, however, Mr. Litten conceded below that his recorded work times were not exact and that he did not record his fifteen minute morning and afternoon breaks, or his bathroom breaks, smoke breaks, and lunch break.[3] Such breaks would have given Mr. Litten sufficient opportunity to conduct the searches on the break room computer. Further, the ALJ misconstrued the technological evidence, which led to her erroneous finding that Mr. Litten would need to be “missing from work for approximately two hours ... in order to be the user accessing or attempting to access pornographic websites.” The evidence showed that the Office of Technology has no mechanism to show when an employee, such as Mr. Litten, actually “logs off’ the break room computer. Consequently, the ALJ misconstrued this important evidence.
*226 Employers can be successful before the Grievance Board with circumstantial evidence. Thus, the absence of direct evidence, such as eyewitness testimony or surveillance evidence of Mr. Litten’s wrongdoing, is inconsequential. The abundance of circumstantial evidence readily demonstrated that it was more likely than not that Mr. Litten was the individual accessing adult-oriented searches on August 27, 2010, all of which was sufficient to sustain the DOH’s termination of his employment.
For these reasons, I find that the circuit court erred in not reversing the decision of the Grievance Board, which is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record.[4] Therefore, I respectfully dissent from the majority’s decision in this case.

. As mentioned by the majority, the Department previously disciplined and suspended Mr. Litten for ten days in 2010 due to his misuse of State resources.

. Litten was not accused of violating the network security policy in this manner in his termination letter.

. Mr. Litten was apparently a smoker at the time in question.

. Although the circuit court stated that its review of the Grievance Board's decision was governed by the standard set forth in the Administrative Procedures Act, the standard to be applied is that set forth in West Virginia Code § 6C-2-5(b) (2010), which provides, as follows:
A party may appeal the decision of the administrative law judge on the grounds that the decision: (1) Is contrary to law or a lawfully adopted rule or written policy of the employer; (2) Exceeds the administrative law judge’s statutory authority; (3) Is the result of fraud or deceit; (4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.